

SEALED

**Office of the United States Attorney**
District of Nevada
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

1  DANIEL G. BOGDEN
   United States Attorney
2  District of Nevada
   Nevada Bar No. 2137
3  DANIEL D. HOLLINGSWORTH
   Assistant United States Attorney
4  Nevada Bar No. 1925
   United States Attorney's Office
5  333 Las Vegas Boulevard South, Suite 5000
   Las Vegas, Nevada 89101
6  Telephone: 702-388-6336
   Facsimile: 702-388-6787
7  Email: *daniel.hollingsworth@usdoj.gov*
   Attorneys for the United States

8

9

10              **UNITED STATES DISTRICT COURT**

11                   **DISTRICT OF NEVADA**

12  UNITED STATES OF AMERICA,              )
                                           )
13              Plaintiff,                 )
                                           )
14      v.                                 )   2:12-CR-485-GMN-(PAL)
                                           )
15  HOPE IPPOLITI,                         )
                                           )
16              Defendant.                 )

17      **UNITED STATES OF AMERICA'S SEALED EX PARTE MOTION TO SUBSTITUTE**
              **AND TO FORFEIT PROPERTY OF HOPE IPPOLITI**
18

19          The United States of America ("United States"), by and through Daniel G. Bogden, United States

20  Attorney for the District of Nevada, and Daniel D. Hollingsworth, Assistant United States Attorney,

21  respectfully moves this Court to substitute and to forfeit the following assets, pursuant to Fed. R. Crim. P.

22  32.2(e) and 21 U.S.C. § 853(p)(1)(A)-(E), and (2), based on the criminal forfeiture money judgment of

23  defendant Hope Ippoliti ("Ippoliti") entered at the change of plea on April 2, 2013 (ECF No. 37) and the

24  Order of Forfeiture entered at sentencing on October 18, 2013 (ECF No. 64):

25  . . .

26  . . .

1.       Real property located at 3320 South Fort Apache Road, #107, Las Vegas, Nevada

89117, APN #163-17-116-076, held in the name of the Hope Nessin-Ippoliti

Revocable Living Trust, Hope Nessin-Ippoliti, Trustee; and

2.       Real property located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada

89147, APN #163-21-516-258, held in the name of the Hope Nessin-Ippoliti

Revocable Living Trust, Hope Nessin-Ippoliti, Trustee.

The grounds for this motion are (1) Fed. R. Crim. P. 32.2(e) and 21 U.S.C. § 853(p)(1)(A)-(E)

and (p)(2) provide for the substitution of assets; (2) Ippoliti owns the above-mentioned property to be

substituted and to be forfeited; (3) as a result of Ippoliti's actions, the traceable proceeds of Ippoliti's

crime (a) cannot be located upon the exercise of due diligence, (b) have been transferred or sold to, or

deposited with, a third party, (c) have been placed beyond the jurisdiction of the court, (d) have been

substantially diminished in value, and (e) have been commingled with other property which cannot be

divided without difficulty.

This motion is made and is based on the pleadings and papers on file herein, the attached

Memorandum of Points and Authorities, and the attached proposed order.

DATED this 14th day of May, 2014.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney

/s/Daniel D. Hollingsworth
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. STATEMENT OF CASE**

**A. Procedural History**

A Twenty-Six Count Criminal Indictment was brought against Hope Ippoliti ("Ippoliti") on December 19, 2012, charging Ippoliti in Count One with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §§ 1343 and 1349; and in Counts Two through Twenty-Five with Wire Fraud in violation of 18 U.S.C. § 1343; and alleged forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and 21 U.S.C. § 853(p). Criminal Indictment, ECF No. 1.

On March 25, 2013, Ippoliti pled guilty to Count One of the Criminal Indictment (ECF No. 1). Plea Agreement, ECF No. 33; Change of Plea Minutes, ECF No. 31.  On April 2, 2013, this Court entered an Order of Forfeiture (ECF No. 37) against Ippoliti for a criminal forfeiture money judgment of $5,597,968.40 in United States Currency.

On October 18, 2013, the sentencing Order of Forfeiture (ECF No. 64) was entered against Ippoliti for $5,597,968.40 in United States Currency.

On October 31, 2013, this Court entered the Judgment in a Criminal Case (ECF No. 67) for Ippoliti with the Order of Forfeiture (ECF No. 64) attached.

**B. Statement of the Facts**

Ippoliti was the Western Regional Controller for Turnberry West Realty, a subsidiary of Turnberry Associates, LLC.  In her capacity as Western Regional Controller, Ippoliti had signatory authority and access to certain Turnberry bank accounts.  During the course of the conspiracy, Ippoliti would make requests for funds to be transferred into accounts to which she had signatory authority.  Ippoliti then falsely represented that the fund transfers were for genuine Turnberry business related expenses.  Ippoliti then fraudulently withdrew the funds by creating checks made payable to cash, her co-conspirator, Rocco Lazazzaro ("Lazazzaro"), and herself.

In order to exercise due diligence to identify and locate assets in the name of Hope Ippoliti, numerous databases and records checks were conducted.  These checks included queries of Accurint

(a database of public records which included records of bankruptcies, liens and judgments, UCC filings, driver's license information, motor vehicle registrations, real properties and addresses), the Nevada Department of Motor Vehicles (DMV), the Clark County Assessor and Recorder's Offices, and the United States Bankruptcy Court. Based upon these checks, Hope Ippoliti appears to have a current interest in the following assets (Ex. 1):

Real property located at 3320 South Fort Apache Road, #107, Las Vegas, Nevada 89117, APN #163-17-116-076, held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee; and

Real property located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147, APN #163-21-516-258, held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee.

## II. ARGUMENT

### A. Analytical Framework

#### (1)   This Court has authority to substitute and forfeit property under 21 U.S.C. § 853(p).

Based on the United States of America's motion to substitute and to forfeit, "the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that … is substitute property that qualifies for forfeiture under an applicable statute." Fed. R. Crim. P. 32.2(e)(1)(B). "Rule 32.2(e) allows the government … to seek substitute property. *See* 21 U.S.C. § 853(p) …." *United States v. Newman*, 659 F.3d 1235, 1242 (9th Cir. 2011) (quotation marks omitted). "If the government shows that the property is subject to forfeiture under Rule 32.2(e)(1), the court must ... enter an order forfeiting that property, or amend an existing preliminary or final order to include it ...." Fed. R. Crim. P. 32.2(e)(2)(A). "[T]he law provides that if, upon conviction, forfeitable assets are unreachable by the government, the court shall order the forfeiture of substitute assets: property of the defendant that is not connected to the underlying crime." *United States v. Ripinsky*, 20 F.3d 359, 362 (9th Cir. 1994).[1] "Subdivision (e) makes clear, as courts have found, that the court retains jurisdiction to

---

[1] "The provisions of § 853 are substantially identical to RICO's criminal forfeiture provisions found at 18 U.S.C. § 1963. The legislative history states that the provisions of § 853 closely parallel those of § 1963 ... *See* S.Rep. No. 98-225, Pub.L. 98-473, 98th Cong., 2d Sess. 198, 213, *reprinted in*

amend the order of forfeiture at any time to include ... any substitute property." Fed. R. Crim. P. 32.2 advisory committee note (citations omitted).

**(2)     The United States may substitute and forfeit property if any one of the five factors under 21 U.S.C. § 853(p) applies.**

When the defendant's illegal proceeds or criminal instrumentalities are unavailable, the United States of America ("United States") can substitute any of defendant's assets for the criminal forfeiture money judgment.  "[A]ny other property of the defendant … " can be substituted and forfeited to the United States. *United States v. Hooper*, 229 F.3d 818, 823 (9th Cir. 2000) (citation and quotation marks omitted; brackets added); *United States v. Bollin*, 264 F.3d 391, 423 (4th Cir. 2001) (explaining that the court substitutes "any other property up to the value of the initially forfeited property, in the event the original property is unavailable[,]" including an IRA.) (citations, emphasis, and quotation marks omitted) *cert. denied, Tietjen v. United States*, 534 U.S. 935 (2001) and *Gormley v. United States*, 535 U.S. 989 (2002).  The defendant's substituted property need not be traceable to the criminal proceeds of the crime. *Ripinsky*, 20 F.3d at 362 (explaining that the defendant's property, that is being substituted, "is not connected to the underlying crime."); *United States v. Lester*, 85 F.3d 1409, 1410 n.3 (9th Cir. 1996) (same).

21 U.S.C. § 853(p) "carries its own set of procedural and substantive requirements before the court may order the forfeiture of substitute property." *Newman*, 659 F.3d at 1242; *United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) ("To obtain an order forfeiting property as a substitute asset, the government need only comply with the requirements of § 853(p).") (citations and quotation marks omitted), *cert. denied,* 529 U.S. 1055 (2000).  "In any case described in any of subparagraphs (A) through (E) of paragraph (1), the court shall order the forfeiture of any other property of the defendant, up to the value of any property described in subparagraphs (A) through (E) of paragraph (1), as applicable." 21 U.S.C. § 853(p)(2) (emphasis added).

---

1984 U.S.C.C.A.N. 3182, 3381, 3396 (1983 Senate Report).  We therefore refer to cases and legislative history discussing § 1963 and § 853 interchangeably." *Ripinsky*, 20 F.3d at 362, n.3 (9th Cir.1994) (quotation marks omitted); *see also Hooper*, 229 F.3d at 821 n.7 (9th Cir. 2000) (same).

Paragraph (2) of this subsection shall apply, if any property described in subsection (a), as a result of any act or omission of defendant – (A) cannot be located upon the exercise of due diligence; (B) has been transferred or sold to, or deposited with, a third party; (C) has been placed beyond the jurisdiction of the court; (D) has been substantially diminished in value; or (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1) (emphasis added).  "[A] court … order[s] forfeiture of any other property of the defendant when the defendant's property subject to forfeiture as proceeds or instrumentalities has been transferred, placed out of reach of the court or has declined in value." *Hooper*, 229 F.3d at 823 (citation and quotation marks omitted; brackets and ellipsis added).

To meet this burden of substituting and forfeiting assets, the United States must show that just one of the requirements of section 853(p) is satisfied. *Lester*, 85 F.3d at 1410 (explaining "if any of a defendant's forfeitable assets are unavailable due to **an enumerated act or omission of the defendant**, the court … order[s] the forfeiture of any other property of the defendant.") (citation and quotation marks omitted; brackets and emphasis added); *United States v. Gordon*, 710 F.3d 1124, 1137 n.14 (10th Cir. 2013) (explaining "in order for the government to forfeit substitute property, **it must establish** that through any act or omission of the defendant **one of five things has occurred** ….") (emphasis added); *United States v. Van Nguyen*, 602 F.3d 886, 903 (8th Cir. 2010) (explaining that 21 U.S.C. § 853(p)(1) requires "proof of one of five categories of unavailability" of defendant's illegal proceeds or instrumentality).

In particular, substitute assets may be forfeited if the government shows that, as a result of any act or omission of the defendant, the forfeitable property (1) cannot be located upon the exercise of due diligence; or (2) has been transferred or sold to, or deposited with, a third party.

Here, the government complied with § 853(p) by submitting a motion and affidavit that recited the efforts the government had made to locate the proceeds of the drug conspiracy that would have been directly forfeitable under § 853(a).  The affidavit concluded that Reyes–Padilla had dissipated or otherwise disposed of the proceeds of her drug trafficking so that the proceeds could not, despite the exercise of due diligence, be located.  Based on this record, it was not error for the district court to order the forfeiture of other property of the defendant up to the amount described in the money judgment.

*Candelaria-Silva*, 166 F.3d at 42-43 (citations, quotation marks, and brackets omitted; emphasis added).

. . .

. . .

**(3)     If the United States meets the burden of one of the five factors under 21 U.S.C. § 853(p), this Court must substitute and forfeit the property.**

If the United States makes this showing, substitution is mandatory. *See*, 21 U.S.C. § 853(p) ("the court *shall* order the forfeiture of any other property of the defendant ... ") (emphasis added); *Ripinsky*, 20 F.3d at 362 (stating "the court *shall* order the forfeiture of substitute assets: ....") (citation omitted; brackets added); *Newman*, 659 F.3d at 1249 (holding that "shall order" is mandatory for the district court.); *United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006) (holding "the underlying statutory scheme … mandated the district court to order forfeiture of substitute assets ….").

**(4)     Substitution and forfeiture of assets makes asset forfeiture remedies more effective and counteracts defendants tendencies to dissipate or to hide assets.**

The policy rationale for the substitute asset provisions is clear.  "Congress requires the forfeiture of any other property as substitute assets[,] ... [and] the substitute assets provision in § 853(p) was enacted to make the government's forfeiture efforts more effective." *Bollin*, 264 F.3d at 423 (citations, emphasis, and quotation marks omitted; brackets added).  The purposes of 21 U.S.C. § 853(p) are to counteract criminals' tendencies to hide their illegally obtained proceeds, to punish the criminals, and to remit the illegal proceeds to victims of crimes.  21 U.S.C. § 853(p) serves punitive, remedial, and corrective purposes.

When Congress enacted 21 U.S.C. § 853 as part of the Criminal Forfeiture Act of 1984, it included the substitute asset provision to address[] one of the most serious impediments to significant criminal forfeitures, i.e., that a defendant may succeed in avoiding the forfeiture sanction simply by transferring his assets to another, placing them beyond the jurisdiction of the court, or taking other actions to render his forfeitable property unavailable at the time of conviction. S.Rep. No. 98-225, at 201, 212, reprinted in 1984 U.S.C.C.A.N. at 3384, 3395 (discussing the shared purpose of the substitute property provisions of 21 U.S.C. § 853 and 18 U.S.C. § 1963 (the analogous RICO statute)).  Describing this problem in substantial detail, Congress noted:

Unlike civil forfeitures, in which the government's seizure of the asset occurs at or soon after the commencement of the forfeiture action, in criminal forfeitures, the assets generally remain in the custody of the defendant until the time of his conviction for the offense upon which the forfeiture is based.  Only after conviction does the government seize the asset.  Thus, a person who anticipates that some of his property may be subject to criminal forfeiture has not only an obvious incentive, but also ample opportunity, to transfer his assets or remove them from the jurisdiction of the court prior to trial and so shield them from any possibility of forfeiture....

> The important economic impact of imposing the sanction of forfeiture against the defendant is thus lost.
>
> *Id*. at 195, reprinted in 1984 U.S.C.C.A.N. at 3378.  It is thus apparent that the remedial purpose of § 853 generally and § 853(p) in particular was to thwart efforts by a defendant to circumvent the economic impact of an anticipated criminal forfeiture sentence.

*United States v. McHan*, 345 F.3d 262, 271-72 (4th Cir. 2003) (quotation marks omitted; brackets in original).

**B. Application of Law to Facts**

The Declaration of Special Agent Jerald R. Burkin establishes: (1) Ippoliti owns the above-mentioned property to be substituted and to be forfeited; (2) the illegal proceeds of Ippoliti's crime (a) cannot be located upon the exercise of due diligence, (b) have been transferred or sold to, or deposited with, a third party, (c) have been placed beyond the jurisdiction of the court, (d) have been substantially diminished in value, and (e) have been commingled with other property which cannot be divided without difficulty. 21 U.S.C. § 853(p). *See* Exhibit ("Ex.") 1, Declaration of Special Agent Burkin, attached hereto and incorporated herein by reference as if fully set forth herein.

This Court found that the illegal proceeds of the crime for the criminal forfeiture money judgment was $5,597,968.40.  Law enforcement exercised due diligence to locate the illegal proceeds and were unable to locate any of the illegal proceeds as Ippoliti transferred or deposited many of the illegal proceeds with a third party or placed them beyond the jurisdiction of the court.  Many of the illegal proceeds of Ippoliti's crime have been substantially diminished in value or have been commingled with other property which cannot be divided without difficulty.  Although the United States must prove only one of the conditions, the United States has met its burden by showing that all five of the five conditions under section 853(p) are satisfied in this case. Ex. 1.

At least one of Ippoliti's assets has been transferred or sold to, or deposited with a third party.  Ippoliti purchased real property located at 9975 Peace Way, #1069, Las Vegas, Nevada in December 2004, for approximately $276,490, and simultaneously took a deed of trust on this . . .

property in the amount of $221,192.   In September 2012, Ippoliti sold the real property located at 9975 Peace Way, #1069, Las Vegas, Nevada, to a third party for $96,000. Ex. 1.

Many assets have been commingled with other property which cannot be divided without difficulty and/or have been placed beyond the jurisdiction of the court.  Ippoliti was interviewed by Special Agent Burkin on August 17, 2012.  Shortly after that interview, where the existence of this investigation was revealed to her, she transferred money out of her possession.  When her defense attorney, Michael J. Miceli, was questioned about this transfer by the prosecuting Assistant United States Attorney, his reply in an e-mail dated April 29, 2013, was that Ippoliti had withdrawn $80,000 from her IRA (Individual Retirement Account) which she gave to her fiancé to put as a down payment on his house and had also withdrawn another $35,000 to pay her taxes. Ex. 1.

In the interview on August 17, 2012, Ippoliti told Special Agent Burkin that she "…gave Turnberry (victim) money to Lazazzaro (co-defendant Rocco Lazazzaro) on so many occasions that it was 'too many to count'."  She estimated that the smallest single amount she ever gave him was approximately $5,000, and the largest single amount was approximately $60,000.  Ippoliti also advised that she used $40,000 of the Turnberry money to pay for the condominium located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada, and also used $17,000 of the Turnberry money to pay to the Internal Revenue Service for fees associated with an early cash out of her personal 401K plan.  In an interview Special Agent Burkin conducted with Rocco Lazazzaro on December 20, 2012, he acknowledged that he received money from Ippoliti, and estimated the amount to be between $500,000 and $750,000.  Lazazzaro said that he ended up "blowing" all of the money he received from Ippoliti on gambling, travel, clothes, etc. Ex. 1.

Ippoliti also had a Fidelity Investments Turnberry Associates 401(K) Profit Sharing Plan in the name of Hope Ippoliti, which as of December 5, 2013, had a value of approximately $18,305.53. On January 13, 2014, this account was closed and the balance transferred to J.P Morgan Chase.  No account under the name of Hope Ippoliti could be subsequently located at J.P Morgan Chase. Ex. 1. . . .

At least one of Ippoliti's assets has been substantially diminished in value.  On December 5, 2013, Ippoliti filed for Chapter 7 Bankruptcy in the District of Nevada.  In her Schedule B-Personal Property, she listed her 2012 Chevrolet Equinox as having a value of $21,000.  In Schedule D-Creditors Holding Secured Claims, Ippoliti stated that the loan on the 2012 Chevrolet Equinox is $27,945.20, resulting in negative equity in this vehicle.  Ippoliti has made arrangements to surrender this vehicle to Ally Financial. Ex. 1.

As can be seen from the declaration of Special Agent Burkin, law enforcement has exercised due diligence in trying to locate the illegal proceeds.  Other than the assets mentioned above, Ippoliti's illegal proceeds (a) cannot be located upon the exercise of due diligence; (b) have been transferred or sold to, or deposited with, a third party; (c) have been substantially diminished in value; (d) have been placed beyond the jurisdiction of the court; and (e) have been commingled with other property which cannot be divided without difficulty.  The United States has exceeded the burden of proving that one of five conditions has been met and instead has demonstrated that all five conditions have been met under section 853(p). Ex. 1.

The United States requests this Court grant the order to substitute and to forfeit the real properties located at 3320 South Fort Apache Road, #107, Las Vegas, Nevada 89117 and 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147 to the United States.  The parcels of real property are more particularly described as follows:

1.   Real property located at 3320 South Fort Apache Road, #107, Las Vegas, Nevada 89117, APN #163-17-116-076, currently held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee.  The property is more particularly described as follows:

ALL THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF CLARK, STATE OF NEVADA AND IS DESCRIBED AS FOLLOWS:
PARCEL I (COMMON AREAS):
AN UNDIVIDED 1/24 INTEREST AS TENANT-IN-COMMON IN THE COMMON ELEMENTS OF PHASE III OF PALISADES POINT (A COMMON INTEREST COMMUNITY CONDOMINIUM SUBDIVISION), AS SHOWN BY MAP THEREOF ON FILE IN BOOK 57 OF PLATS, PAGE 41, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
EXCEPTING THEREFROM THE FOLLOWING:

. . .

ALL LIVING UNITS AND ASSOCIATION PROPERTY SHOWN IN PHASE III OF SAID PLAT OF PALISADES POINT AND AS FURTHER DEFINED IN THE DECLARATION OF RESTRICTIONS HEREAFTER SET FORTH.
AND RESERVING THEREFROM:
THE RIGHT TO POSSESSION OF ALL THOSE AREAS DESIGNATED AS EXCLUSIVE USE AREAS OF LIMITED COMMON ELEMENTS, AS SHOWN UPON THE PLAT REFERRED TO ABOVE;
AND FURTHER RESERVING THEREFROM, FOR THE BENEFIT OF THE OWNERS OF CONDOMINIUMS IN ALL SUBSEQUENT PHASES, NON-EXCLUSIVE EASEMENTS ON, OVER AND ACROSS THE ASSOCIATION PROPERTY AS DEFINED AND SHOWN UPON THE PLAT REFERRED TO ABOVE FOR INGRESS, EGRESS, AND RECREATIONAL USE, SUBJECT TO THE TERMS AND AS MORE PARTICULARLY SET FORTH IN "DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS", RECORDED ON JULY 28, 1993 IN BOOK 930728, AS INSTRUMENT NO. 00145, CLARK COUNTY, NEVADA, RECORDER, TO WHICH REFERENCE IS HEREAFTER MADE.
PARCEL II (LIVING UNIT):
LIVING UNIT 107, IN BUILDING 10, AS SHOWN UPON THE CONDOMINIUM PLAT REFERRED TO ABOVE.
PARCEL III (LIMITED COMMON ELEMENT):
THE EXCLUSIVE RIGHT TO USE, POSSESSION, AND OCCUPANCY OF THOSE PORTIONS OF THE LIMITED COMMON ELEMENTS EXCLUSIVE USE AREA BEING DESCRIBED UPON THE PLAT AS BALCONIES, PATIOS, STAIRWAYS, AND ASSIGNED PARKING SPACES, WHICH ARE APPURTENANT TO AND FOR THE EXCLUSIVE USE OF PARCEL III.
PARCEL IV (ASSOCIATION PROPERTY AND COMMON ELEMENTS):
A NON-EXCLUSIVE EASEMENT ON AND OVER THE COMMON ELEMENTS AND ASSOCIATION PROPERTY (AS DEFINED IN THE DECLARATION) FOR ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS, EGRESS, UNDONE OF THE AMENITIES LOCATED THEREON, SUBJECT TO THE TERMS AND PROVISIONS OF THE DECLARATION.  THIS EASEMENT IS APPPURTENANT TO PARCELS I, II AND III ABOVE DESCRIBED.
PARCEL V (PHASED AREAS):
A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS, AND RECREATIONAL USE ON AND OVER THE COMMON ELEMENTS AND ASSOCIATION PROPERTY IN SUBSEQUENT PHASES, WHICH EASEMENT IS APPURTENANT TO PARCELS I, II AND III DESCRIBED ABOVE.  THIS EASEMENT SHALL BE EFFECTIVE ONLY UNTIL RECORDATION PRIOR TO EXPIRATION OF RIGHT TO ANNEX OF A DECLARATION OF ANNEXATION DECLARING THE PHASES TO BE SUBJECT TO THE DECLARATION WHICH REQUIRES THE OWNERS OF CONDOMINIUMS IN SAID SUBSEQUENT PHASES TO BE MEMBERS OF THE ASSOCIATION.
PARCEL VI (HOMEOWNERS' ASSOCIATION):
ONE OWNER'S MEMBERSHIP IN THE PALISADES POINT PROPERTY ASSOCIATION, A NEVADA CORPORATION, HEREINAFTER CALLED THE ASSOCIATION.
PROPERTY ADDRESS:  3320 SOUTH FORT APACHE ROAD, UNIT 107, LAS VEGAS, NEVADA 89117, PARCEL ID: 163-17-116-076.

. . .

. . .

11

2.   Real property located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147, APN #163-21-516-258, held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee.  This property is more particularly described as follows:

ALL THAT REAL PROPERTY SITUATED IN THE COUNTY OF CLARK, STATE OF NEVADA, BOUNDED AND DESCRIBED AS FOLLOWS:
UNIT 1146 ("UNIT"), IN BUILDING 23 ("BUILDING") AS SHOWN ON THE FINAL MAP OF RANCHO VIEJO, FILED IN BOOK 74 OF PLATS, PAGE 100, IN THE OFFICIAL RECORDS OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA, AND AS DEFINED AND SET FORTH IN AND SUBJECT TO THAT CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR RANCHO VIEJO CONDOMINIUM, RECORDED JULY 27, 2004 AS INSTRUMENT NO 4141 IN BOOK 20040727, OFFICIAL RECORDS, CLARK COUNTY, NEVADA ("RANCHO VIEJO DECLARATION").
PARCEL II:
TOGETHER WITH AN UNDIVIDED ALLOCATED FRACTIONAL INTEREST IN AND TO THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE RANCHO VIEJO DECLARATION.
PARCEL III:
TOGETHER WITH AN EXCLUSIVE INTEREST IN AND TO THOSE LIMITED COMMON ELEMENTS, IF ANY, APPURTENANT TO THE UNIT, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE RANCHO VIEJO DECLARATION.
PARCEL IV:
TOGETHER WITH A NON-EXCLUSIVE EASEMENT OF REASONABLE INGRESS TO AND EGRESS FROM THE UNIT, AND OF ENJOYMENT OF THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE RANCHO VIEJO DECLARATION.
PROPERTY ADDRESS:  7885 WEST FLAMINGO ROAD, UNIT 1146, LAS VEGAS, NEVADA, 89147.  PARCEL ID: 163-21-516-258.

## III. CONCLUSION

Based on the foregoing, the Court should allow the United States to substitute and to forfeit the real properties at 3320 South Fort Apache Road, #107, Las Vegas, Nevada 89117 and 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147 to the United States.

DATED this 14th day of May, 2014.

Respectfully submitted,

DANIEL G. BOGDEN
United States Attorney


/s/Daniel D. Hollingsworth
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney

12

# EXHIBIT 1

# EXHIBIT 1

## DECLARATION OF SPECIAL AGENT JERALD R. BURKIN

I, Jerald R. Burkin, do hereby declare:

I am a Special Agent (SA) of the Federal Bureau of Investigation (FBI), and have been so employed since March 2008.  I have been assigned to the Las Vegas Division of the FBI since my graduation from the FBI Academy, and have been assigned to the White Collar Crime Squad for all of that time.  The White Collar Crime Squad is tasked with investigating financially based crimes which constitute violations of Federal law including Conspiracy to Commit Mail Fraud and Wire Fraud, 18 U.S.C. §§ 1341, 1343, and 1349, and Wire Fraud, 18 U.S.C. § 1343.  I have received basic training related to the investigation of these crimes. I have previously investigated numerous matters involving financially based crimes, all of which require preparation of reports, conducting interviews with victims, witnesses and suspects, conducting surveillance, gathering and identifying evidence, obtaining and analyzing financial records, conducting criminal and financial history checks, the execution of search warrants and arrest warrants, liaison with other FBI Special Agents and other law enforcement officers, and court presentation and testimony.  The information provided herein is the result of my investigation and review by others, including Contract Forfeiture Investigator Richard L. Beasley, who is assigned to the Las Vegas Division of the FBI to focus on asset seizure and forfeiture matters.  To the extent that any information in this declaration is not within my personal knowledge, it was made known to me through reliable law enforcement sources, and I believe it to be true.

This declaration supports a motion to substitute and forfeit assets of Hope Ippoliti ("Ippoliti").

On December 19, 2012, a Federal Grand Jury returned an indictment charging Hope Ippoliti in Count One with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1343 and 1349, and in Counts Two through Twenty Five with Wire Fraud in violation of 18 U.S.C. § 1343.  The indictment included Forfeiture Allegations alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).  The time span of the criminal conduct as charged in the indictment was from May 17, 2007, to January 12, 2012.

Hope Ippoliti was the Western Regional Controller for Turnberry West Realty, a subsidiary of Turnberry Associates, LLC.  In her capacity as Western Regional Controller, Ippoliti had signatory authority and access to certain Turnberry bank accounts.  During the

1

course of the conspiracy, Ippoliti would make requests for funds to be transferred into accounts to which she had signatory authority. Ippoliti then falsely represented that the fund transfers were for genuine Turnberry business related expenses. Ippoliti then fraudulently withdrew the funds by creating checks made payable to cash, her co-conspirator, Rocco Lazazzaro ("Lazazzaro"), and herself.

On March 25, 2013, Ippoliti entered into a plea agreement with the government, and pled guilty to Conspiracy to Commit Wire Fraud. Ippoliti agreed to a criminal forfeiture money judgment of $5,597,968.40 in her plea agreement. An Order of Forfeiture was entered on April 2, 2013, directing Ippoliti to pay a criminal forfeiture money judgment of $5,597,968.40. On October 18, 2013, the Court sentenced Ippoliti to 37 months in prison and entered an Order of Forfeiture directing Ippoliti to pay a criminal forfeiture money judgment of $5,597,968.40.

In order to exercise due diligence to identify and locate assets in the name of Hope Ippoliti, numerous databases and records checks were conducted. These checks included queries of Accurint (a database of public records which included records of bankruptcies, liens and judgments, UCC filings, driver's license information, motor vehicle registrations, real properties and addresses), the Nevada Department of Motor Vehicles, the Clark County Assessor and Recorder's Offices, and the United States Bankruptcy Court. Based upon these checks, Hope Ippoliti appears to have an interest in the following assets:

Real property located at 3320 South Fort Apache Road, #107, Las Vegas, Nevada 89117, APN #163-17-116-076, held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee;

Real property located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147, APN #163-21-516-258, held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee;

Real property located at 9975 Peace Way, #1069, Las Vegas, Nevada 89147, APN #163-19-313-100, held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee;

Fidelity Investments Turnberry Associates 401(K) Profit Sharing Plan, in the name of Hope Ippoliti, with a value of approximately $18,305.53; and

2012 Chevrolet Equinox bearing Nevada license plate LVXR25, Vehicle Identification Number (VIN) 2GNALDEK1C1228831, registered in the name of Hope Ippoliti, and the lien holder as Ally Financial;

At least one of Ippoliti's assets has been transferred or sold to, or deposited with a third party.  In September 2012, Ippoliti sold real property located at 9975 Peace Way, #1069, Las Vegas, Nevada 89147 to a third party for $96,000.  She originally purchased this property in December 2004, for approximately $276,490, and simultaneously taken a deed of trust on this property in the amount of $221,192.

Many assets have been commingled with other property which cannot be divided without difficulty and/or have been placed beyond the jurisdiction of the court.  Ippoliti was interviewed by your Declarant on August 17, 2012.  Shortly after this interview, where the existence of this investigation was revealed to her, she transferred money out of her possession.  When her defense attorney, Michael J. Miceli, was questioned about this transfer by the prosecuting Assistant United States Attorney, his reply in an e-mail dated April 29, 2013, was that Ippoliti had withdrawn $80,000 from her IRA (Individual Retirement Account) which she gave to her fiancé to put as a down payment on his house, and had also withdrawn another $35,000 to pay her taxes.

In her interview on August 17, 2012, Ippoliti told your Declarant that she "…gave Turnberry (victim) money to Lazazzaro (co-defendant Rocco Lazazzaro) on so many occasions that it was 'too many to count'."  She estimated that the smallest single amount she ever gave him was approximately $5,000, and the largest single amount was approximately $60,000.  Ippoliti also advised that she used $40,000 of the Turnberry money to pay for the condominium located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147, and also used $17,000 of the Turnberry money to pay to the Internal Revenue Service for fees associated with an early cash out of her personal 401K plan.  In an interview your Declarant conducted with Rocco Lazazzaro on December 20, 2012, he acknowledged that he received money from Ippoliti, and estimated the amount to be between $500,000 and $750,000.  Lazazzaro said that he ended up "blowing" all of the money he received from Ippoliti on gambling, travel, clothes, etc.

Ippoliti also had a Fidelity Investments Turnberry Associates 401(K) Profit Sharing Plan in the name of Hope Ippoliti, which as of December 5, 2013, had a value of approximately $18,305.53.  On January 13, 2014, this account was closed and the balance transferred to J.P Morgan Chase.  No account under the name of Hope Ippoliti could be subsequently located at J.P Morgan Chase.

At least one of Ippoliti's assets has been substantially diminished in value.  On December 5, 2013, Ippoliti filed for Chapter 7 Bankruptcy in the District of Nevada.  In her Schedule B-Personal Property, she listed her 2012 Chevrolet Equinox as having a value of $21,000.  In Schedule D-Creditors Holding Secured Claims, Ippoliti stated that the loan on the 2012 Chevrolet Equinox is $27,945.20, resulting in negative equity in this vehicle.  Ippoliti has made arrangements to surrender this vehicle to Ally Financial.

Based upon the foregoing, the following property should be substituted and forfeited to the United States:

1.    Real property located at 3320 South Fort Apache Road, #107, Las Vegas, Nevada 89117, APN #163-17-116-076, currently held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope Nessin-Ippoliti, Trustee.  The property is more particularly described as follows:

ALL THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF CLARK, STATE OF NEVADA AND IS DESCRIBED AS FOLLOWS:
PARCEL I (COMMON AREAS):
AN UNDIVIDED 1/24 INTEREST AS TENANT-IN-COMMON IN THE COMMON ELEMENTS OF PHASE III OF PALISADES POINT (A COMMON INTEREST COMMUNITY CONDOMINIUM SUBDIVISION), AS SHOWN BY MAP THEREOF ON FILE IN BOOK 57 OF PLATS, PAGE 41, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA.
EXCEPTING THEREFROM THE FOLLOWING:
ALL LIVING UNITS AND ASSOCIATION PROPERTY SHOWN IN PHASE III OF SAID PLAT OF PALISADES POINT AND AS FURTHER DEFINED IN THE DECLARATION OF RESTRICTIONS HEREAFTER SET FORTH.
AND RESERVING THEREFROM:
THE RIGHT TO POSSESSION OF ALL THOSE AREAS DESIGNATED AS EXCLUSIVE USE AREAS OF LIMITED COMMON ELEMENTS, AS SHOWN UPON THE PLAT REFERRED TO ABOVE;
AND FURTHER RESERVING THEREFROM, FOR THE BENEFIT OF THE OWNERS OF CONDOMINIUMS IN ALL SUBSEQUENT PHASES, NON-EXCLUSIVE EASEMENTS ON, OVER AND ACROSS THE ASSOCIATION PROPERTY AS DEFINED AND SHOWN UPON THE PLAT REFERRED TO ABOVE FOR INGRESS, EGRESS, AND RECREATIONAL USE, SUBJECT TO THE TERMS AND AS MORE PARTICULARLY SET FORTH IN "DECLARATION OF COVENANTS, CONDITIONS, AND RESTRICTIONS", RECORDED ON JULY 28, 1993 IN BOOK 930728, AS INSTRUMENT NO. 00145, CLARK COUNTY, NEVADA, RECORDER, TO WHICH REFERENCE IS HEREAFTER MADE.
PARCEL II (LIVING UNIT):
LIVING UNIT 107, IN BUILDING 10, AS SHOWN UPON THE CONDOMINIUM PLAT REFERRED TO ABOVE.
PARCEL III (LIMITED COMMON ELEMENT):

4

THE EXCLUSIVE RIGHT TO USE, POSSESSION, AND OCCUPANCY OF THOSE
PORTIONS OF THE LIMITED COMMON ELEMENTS EXCLUSIVE USE AREA
BEING DESCRIBED UPON THE PLAT AS BALCONIES, PATIOS, STAIRWAYS,
AND ASSIGNED PARKING SPACES, WHICH ARE APPURTENANT TO AND FOR
THE EXCLUSIVE USE OF PARCEL III.
PARCEL IV (ASSOCIATION PROPERTY AND COMMON ELEMENTS):
A NON-EXCLUSIVE EASEMENT ON AND OVER THE COMMON ELEMENTS
AND ASSOCIATION PROPERTY (AS DEFINED IN THE DECLARATION) FOR
ACCESS, USE, OCCUPANCY, ENJOYMENT, INGRESS, EGRESS, UNDONE OF
THE AMENITIES LOCATED THEREON, SUBJECT TO THE TERMS AND
PROVISIONS OF THE DECLARATION.  THIS EASEMENT IS APPPURTENANT
TO PARCELS I, II AND III ABOVE DESCRIBED.
PARCEL V (PHASED AREAS):
A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS, AND
RECREATIONAL USE ON AND OVER THE COMMON ELEMENTS AND
ASSOCIATION PROPERTY IN SUBSEQUENT PHASES, WHICH EASEMENT IS
APPURTENANT TO PARCELS I, II AND III DESCRIBED ABOVE.  THIS
EASEMENT SHALL BE EFFECTIVE ONLY UNTIL RECORDATION PRIOR TO
EXPIRATION OF RIGHT TO ANNEX OF A DECLARATION OF ANNEXATION
DECLARING THE PHASES TO BE SUBJECT TO THE DECLARATION WHICH
REQUIRES THE OWNERS OF CONDOMINIUMS IN SAID SUBSEQUENT PHASES
TO BE MEMBERS OF THE ASSOCIATION.
PARCEL VI (HOMEOWNERS' ASSOCIATION):
ONE OWNER'S MEMBERSHIP IN THE PALISADES POINT PROPERTY
ASSOCIATION, A NEVADA CORPORATION, HEREINAFTER CALLED THE
ASSOCIATION.
PROPERTY ADDRESS:  3320 SOUTH FORT APACHE ROAD, UNIT 107, LAS
VEGAS, NEVADA 89117, PARCEL ID: 163-17-116-076.

An Exterior-Only Inspection Individual Condominium Unit Appraisal Report completed
on March 29, 2014, stated the market value of the real property is $95,000.  No mortgage exists
on this property.

2.  Real property located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada
89147, APN #163-21-516-258, held in the name of the Hope Nessin-Ippoliti Revocable Living
Trust, Hope Nessin-Ippoliti, Trustee.  This property is more particularly described as follows:

ALL THAT REAL PROPERTY SITUATED IN THE COUNTY OF CLARK, STATE
OF NEVADA, BOUNDED AND DESCRIBED AS FOLLOWS:
UNIT 1146 ("UNIT"), IN BUILDING 23 ("BUILDING") AS SHOWN ON THE FINAL
MAP OF RANCHO VIEJO, FILED IN BOOK 74 OF PLATS, PAGE 100, IN THE
OFFICIAL RECORDS OF THE COUNTY RECORDER, CLARK COUNTY,
NEVADA, AND AS DEFINED AND SET FORTH IN AND SUBJECT TO THAT
CERTAIN DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS
FOR RANCHO VIEJO CONDOMINIUM, RECORDED JULY 27, 2004 AS

5

INSTRUMENT NO 4141 IN BOOK 20040727, OFFICIAL RECORDS, CLARK COUNTY, NEVADA ("RANCHO VIEJO DECLARATION").
PARCEL II:
TOGETHER WITH AN UNDIVIDED ALLOCATED FRACTIONAL INTEREST IN AND TO THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE RANCHO VIEJO DECLARATION.
PARCEL III:
TOGETHER WITH AN EXCLUSIVE INTEREST IN AND TO THOSE LIMITED COMMON ELEMENTS, IF ANY, APPURTENANT TO THE UNIT, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE RANCHO VIEJO DECLARATION.
PARCEL IV:
TOGETHER WITH A NON-EXCLUSIVE EASEMENT OF REASONABLE INGRESS TO AND EGRESS FROM THE UNIT, AND OF ENJOYMENT OF THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE RANCHO VIEJO DECLARATION.
PROPERTY ADDRESS: 7885 WEST FLAMINGO ROAD, UNIT 1146, LAS VEGAS, NEVADA, 89147.  PARCEL ID: 163-21-516-258.

An Exterior-Only Inspection Individual Condominium Unit Appraisal Report completed on March 29, 2014, stated the market value of the real property is $75,000.  No mortgage exists on this property.  As stated previously in this declaration, Ippoliti stated she used $40,000 of the illegal proceeds to pay for the condominium located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge pursuant to 28 U.S.C. § 1746 (2).

Executed on:   05 / 13 / 2014

_____
Jerald R. Burkin
Special Agent, Federal Bureau of Investigation



SEALED

**Office of the United States Attorney**
District of Nevada
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702) 388-6336

1

2

3

4

5

6

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

7   UNITED STATES OF AMERICA,      )

)

8            Plaintiff,         )

)

9       v.               )   2:12-CR-485-GMN-(PAL)

)

10   HOPE IPPOLITI,          )

)

11           Defendant.       )

12

**SUBSTITUTION AND FORFEITURE ORDER**

13       This Court, having read and considered the United States of America's Sealed Ex Parte Motion to

14   Substitute and to Forfeit Property of Hope Ippoliti and the Sealed Ex Parte Motion to File this Motion

15   and the Motion to Substitute and to Forfeit Property of Hope Ippoliti under Seal and Order, and good

16   cause appearing, finds the assets described below are owned by Hope Ippoliti.

17       IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the following real properties

18   are substituted and is forfeited to the United States of America pursuant to 21 U.S.C. § 853(p):

19       1.  Real property located at 3320 South Fort Apache Road, #107, Las Vegas, Nevada 89117,
APN #163-17-116-076, currently held in the name of the Hope Nessin-Ippoliti Revocable Living

20   Trust, Hope Nessin-Ippoliti, Trustee.  The property is more particularly described as follows:

21       ALL THE LAND REFERRED TO HEREIN IS SITUATED IN THE COUNTY OF
CLARK, STATE OF NEVADA AND IS DESCRIBED AS FOLLOWS:

22       PARCEL I (COMMON AREAS):
AN UNDIVIDED 1/24 INTEREST AS TENANT-IN-COMMON IN THE COMMON

23       ELEMENTS OF PHASE III OF PALISADES POINT (A COMMON INTEREST
COMMUNITY CONDOMINIUM SUBDIVISION), AS SHOWN BY MAP THEREOF ON

24       FILE IN BOOK 57 OF PLATS, PAGE 41, IN THE OFFICE OF THE COUNTY
RECORDER OF CLARK COUNTY, NEVADA.

25       EXCEPTING THEREFROM THE FOLLOWING:
ALL LIVING UNITS AND ASSOCIATION PROPERTY SHOWN IN PHASE III OF

26       SAID PLAT OF PALISADES POINT AND AS FURTHER DEFINED IN THE

1   DECLARATION OF RESTRICTIONS HEREAFTER SET FORTH.
    AND RESERVING THEREFROM:
2   THE RIGHT TO POSSESSION OF ALL THOSE AREAS DESIGNATED AS
    EXCLUSIVE USE AREAS OF LIMITED COMMON ELEMENTS, AS SHOWN UPON
3   THE PLAT REFERRED TO ABOVE;
    AND FURTHER RESERVING THEREFROM, FOR THE BENEFIT OF THE OWNERS
4   OF CONDOMINIUMS IN ALL SUBSEQUENT PHASES, NON-EXCLUSIVE
    EASEMENTS ON, OVER AND ACROSS THE ASSOCIATION PROPERTY AS
5   DEFINED AND SHOWN UPON THE PLAT REFERRED TO ABOVE FOR INGRESS,
    EGRESS, AND RECREATIONAL USE, SUBJECT TO THE TERMS AND AS MORE
6   PARTICULARLY SET FORTH IN "DECLARATION OF COVENANTS, CONDITIONS,
    AND RESTRICTIONS", RECORDED ON JULY 28, 1993 IN BOOK 930728, AS
7   INSTRUMENT NO. 00145, CLARK COUNTY, NEVADA, RECORDER, TO WHICH
    REFERENCE IS HEREAFTER MADE.
8   PARCEL II (LIVING UNIT):
    LIVING UNIT 107, IN BUILDING 10, AS SHOWN UPON THE CONDOMINIUM PLAT
9   REFERRED TO ABOVE.
    PARCEL III (LIMITED COMMON ELEMENT):
10  THE EXCLUSIVE RIGHT TO USE, POSSESSION, AND OCCUPANCY OF THOSE
    PORTIONS OF THE LIMITED COMMON ELEMENTS EXCLUSIVE USE AREA
11  BEING DESCRIBED UPON THE PLAT AS BALCONIES, PATIOS, STAIRWAYS, AND
    ASSIGNED PARKING SPACES, WHICH ARE APPURTENANT TO AND FOR THE
12  EXCLUSIVE USE OF PARCEL III.
    PARCEL IV (ASSOCIATION PROPERTY AND COMMON ELEMENTS):
13  A NON-EXCLUSIVE EASEMENT ON AND OVER THE COMMON ELEMENTS AND
    ASSOCIATION PROPERTY (AS DEFINED IN THE DECLARATION) FOR ACCESS,
14  USE, OCCUPANCY, ENJOYMENT, INGRESS, EGRESS, UNDONE OF THE
    AMENITIES LOCATED THEREON, SUBJECT TO THE TERMS AND PROVISIONS OF
15  THE DECLARATION.  THIS EASEMENT IS APPPURTENANT TO PARCELS I, II AND
    III ABOVE DESCRIBED.
16  PARCEL V (PHASED AREAS):
    A NON-EXCLUSIVE EASEMENT FOR INGRESS, EGRESS, AND RECREATIONAL
17  USE ON AND OVER THE COMMON ELEMENTS AND ASSOCIATION PROPERTY
    IN SUBSEQUENT PHASES, WHICH EASEMENT IS APPURTENANT TO PARCELS I,
18  II AND III DESCRIBED ABOVE.  THIS EASEMENT SHALL BE EFFECTIVE ONLY
    UNTIL RECORDATION PRIOR TO EXPIRATION OF RIGHT TO ANNEX OF A
19  DECLARATION OF ANNEXATION DECLARING THE PHASES TO BE SUBJECT TO
    THE DECLARATION WHICH REQUIRES THE OWNERS OF CONDOMINIUMS IN
20  SAID SUBSEQUENT PHASES TO BE MEMBERS OF THE ASSOCIATION.
    PARCEL VI (HOMEOWNERS' ASSOCIATION):
21  ONE OWNER'S MEMBERSHIP IN THE PALISADES POINT PROPERTY
    ASSOCIATION, A NEVADA CORPORATION, HEREINAFTER CALLED THE
22  ASSOCIATION.
    PROPERTY ADDRESS:  3320 SOUTH FORT APACHE ROAD, UNIT 107, LAS VEGAS,
23  NEVADA 89117, PARCEL ID: 163-17-116-076; and

24      2.   Real property located at 7885 West Flamingo Road, #1146, Las Vegas, Nevada 89147,
    APN #163-21-516-258, held in the name of the Hope Nessin-Ippoliti Revocable Living Trust, Hope
25  Nessin-Ippoliti, Trustee.  This property is more particularly described as follows:

26  . . .

2

1  ALL THAT REAL PROPERTY SITUATED IN THE COUNTY OF CLARK, STATE OF
NEVADA, BOUNDED AND DESCRIBED AS FOLLOWS:

2  UNIT 1146 ("UNIT"), IN BUILDING 23 ("BUILDING") AS SHOWN ON THE FINAL
MAP OF RANCHO VIEJO, FILED IN BOOK 74 OF PLATS, PAGE 100, IN THE

3  OFFICIAL RECORDS OF THE COUNTY RECORDER, CLARK COUNTY, NEVADA,
AND AS DEFINED AND SET FORTH IN AND SUBJECT TO THAT CERTAIN

4  DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS FOR
RANCHO VIEJO CONDOMINIUM, RECORDED JULY 27, 2004 AS INSTRUMENT NO

5  4141 IN BOOK 20040727, OFFICIAL RECORDS, CLARK COUNTY, NEVADA
("RANCHO VIEJO DECLARATION").

6  PARCEL II:
TOGETHER WITH AN UNDIVIDED ALLOCATED FRACTIONAL INTEREST IN AND

7  TO THE GENERAL COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO,
THE PLAT AND THE RANCHO VIEJO DECLARATION.

8  PARCEL III:
TOGETHER WITH AN EXCLUSIVE INTEREST IN AND TO THOSE LIMITED

9  COMMON ELEMENTS, IF ANY, APPURTENANT TO THE UNIT, AS SET FORTH IN,
AND SUBJECT TO, THE PLAT AND THE RANCHO VIEJO DECLARATION.

10  PARCEL IV:
TOGETHER WITH A NON-EXCLUSIVE EASEMENT OF REASONABLE INGRESS TO

11  AND EGRESS FROM THE UNIT, AND OF ENJOYMENT OF THE GENERAL
COMMON ELEMENTS, AS SET FORTH IN, AND SUBJECT TO, THE PLAT AND THE

12  RANCHO VIEJO DECLARATION.
PROPERTY ADDRESS:  7885 WEST FLAMINGO ROAD, UNIT 1146, LAS VEGAS,

13  NEVADA, 89147.  PARCEL ID: 163-21-516-258.

14  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States of America

15  is now entitled to, and should, reduce the aforementioned properties to the possession of the United

16  States of America;

17  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States of

18  America should take into custody the aforementioned properties;

19  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all right, title, and

20  interest of Hope Ippoliti in the aforementioned properties is forfeited and is vested in the United

21  States of America and shall be safely held by the United States of America until further order of the

22  Court;

23  IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the United States of America

24  will serve Hope Ippoliti with this order and the two motions after the properties have been taken into

25  custody;

26  . . .

3

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED the United States of America shall publish for at least thirty (30) consecutive days on the official internet government forfeiture website, www.forfeiture.gov, notice of this Order, which shall describe the forfeited properties, state the time under the applicable statute when a petition contesting the forfeiture must be filed, and state the name and contact information for the government attorney to be served with the petition, pursuant to Fed. R. Crim. P. 32.2(b)(6) and Title 21, United States Code, Section 853(n)(2).

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that any individual or entity who claims an interest in the aforementioned properties must file a petition for a hearing to adjudicate the validity of the petitioner's alleged interest in the properties, which petition shall be signed by the petitioner under penalty of perjury pursuant to Title 21, United States Code, Section 853(n)(3) and Title 28, United States Code, Section 1746, and shall set forth the nature and extent of the petitioner's right, title, or interest in the forfeited properties and any additional facts supporting the petitioner's petition and the relief sought.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED a petition, if any, must be filed with the Clerk of the Court, 333 Las Vegas Boulevard South, Las Vegas, Nevada 89101, no later than thirty (30) days after the notice is sent or, if direct notice was not sent, no later than sixty (60) days after the first day of the publication on the official internet government forfeiture site, www.forfeiture.gov.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED a copy of the petition, if any, shall be served upon the Asset Forfeiture Attorney of the United States Attorney's Office at the following address at the time of filing:

> Daniel Hollingsworth
> Assistant United States Attorney
> Lloyd D. George United States Courthouse
> 333 Las Vegas Boulevard South, Suite 5000
> Las Vegas, Nevada 89101.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED the notice described herein need not be published in the event a Declaration of Forfeiture is issued by the appropriate agency

1  following publication of notice of seizure and intent to administratively forfeit the above-described

2  properties.

3      **DATED** this 16th day of May, 2014.

4

5      _____

6      Gloria M. Navarro, Chief Judge
       United States District Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26